## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA C. CASS, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | **1:07-cr-00035-LSC-JEO** |
| | ) | **1:11-cv-08011-LSC-JEO** |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION</u>

The cases referenced above are before the court on the *pro se* motion of defendant Patricia Cass ("Cass"), to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. (Doc. 1).[1]  She attacks her convictions with the following claims: (1) her attorney rendered ineffective assistance of counsel during the trial; and (2) the Government knowingly presented false testimony during the trial.  Upon careful consideration, the court finds no need for an evidentiary hearing and that the motion is due to be denied.

## I.     FACTS AND PROCEDURAL HISTORY

On January 31, 2007, the Grand Jury issued a 30-count indictment charging Cass with two drug-related offenses.  (1:07-cr-0035-LSC-JEO, Doc. 1).  Count One charged Cass, her husband, and eight others with Conspiracy to Distribute and Possess with Intent to Distribute 50 grams or more of a Mixture and Substance containing a Detectable Amount of Cocaine Base, in violation of 21 U.S.C. § 846, 841(a)(1), and (b)(1)(A).  (*Id*. at 2-3).  Count Twenty-nine charged Cass and her husband, Paul Cass, with Maintaining a Crack House, in violation of 21 U.S.C. §

---

[1] References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court.  References to "1:07-cr-0035-LSC-JEO, Doc. ___" are to the document numbers assigned by the Clerk of the Court in the defendant's original criminal case (*United States v. Cass*, 1:07-cr-00035-LSC-JEO).

856(a)(1).  (*Id.* at 18).

The case proceeded to trial against Cass and her husband and the jury convicted Cass of both counts on May 11, 2007. (1:07-cr-0035-LSC-JEO, Doc. 183).  At the sentencing hearing, this court sentenced Cass to 360 months on Count 1 and 240 months on Count 29, with each count to run concurrently with the other.  (1:07-cr-0035-LSC-JEO, Doc. 237).

Cass filed a direct appeal on September 26, 2007.  (1:07-cr-0035-LSC-JEO, Doc. 245). Appellate counsel filed an *Anders*[2] brief and on February 26, 2009, the Eleventh Circuit granted appellate counsel's motion to withdraw and affirmed Cass's conviction and sentence in an unpublished opinion.  *See United States v. Cass*, 315 F. App'x 869 (11th Cir. 2009).  On March 8, 2010, United States Supreme Court denied Cass's petition for writ of *certiorari*.  *Cass v. United States*, 559 U.S. 996 (2010).

On March 17, 2011, Cass timely filed the instant petition pursuant to 28 U.S.C. § 2255. (Doc. 1).  On March 21, 2011, this court ordered the Government to respond to the petition. (Doc. 2).  The Government responded with a Motion to Dismiss supported by several exhibits, including an affidavit of Cass's trial counsel, Dwayne L. Brown ("Brown").  (Doc. 4).  Cass replied to the Government's response on May 20, 2011.  (Doc. 6).  Because Cass is proceeding *pro se*, her pleadings are entitled to liberal construction.  *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991).

## II.    STANDARD OF REVIEW

A prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or

[2]*See Anders v. California*, 386 U.S. 738 (1967).

2

is otherwise subject to collateral attack. 28 U.S.C. § 2255. If a court finds a claim under § 2255 to be valid, then the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*. To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." § 2255. The Eleventh Circuit Court of Appeals has explained, "[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

III.    **DISCUSSION**

   A.    **Defendant's Claims**

Cass asserts two constitutional claims for relief:

   1.    **Ineffective Assistance of Counsel Claim -** That Dewayne Brown rendered ineffective assistance in violation of the Sixth Amendment due to his alleged:

      A.    Failure to move to suppress allegedly illegal "electronic surveillance evidence" (doc. 1 at 4-8);

B.     Failure to properly investigate the racial composition of the venire from which the petit jury was selected after allegedly receiving "credible information that the District Court's juror system was race partial" and failing to move to dismiss the indictment or for a new selection of petit jurors on these grounds (*id*. at 8-12);

C.     Failure to conduct a thorough investigation of government witnesses (*id*. at 12-14);

D.     Failure to move the court for judgment of acquittal on count one of the indictment (*id*. at 16-18); and

E.     Failure to object to allegedly incorrect criminal history calculation in the Presentence Investigation Report or to request and adjustment of the base level offense due to Cass's "minimal role in the charged offense" (*id*.)

**2.**     ***Giglio***[3] **Claim-** That the Government knowingly presented false evidence to the jury in violation of the Fifth and Sixth Amendment (*id*. at15-16).

Each claim will be addressed separately below.

**B.**     **Ineffective Assistance of Counsel**

**1.**     **Legal Standard**

In order to prevail on a claim of ineffective assistance of counsel, the movant must establish:  (1) deficient performance – that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice – but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). The burden of proving ineffective assistance remains with the movant at all times.  *Chandler*, 218 F.3d at 1315 n.15.  A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied.  *Strickland*, 466 U.S. at 697; *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995).

---

[3]*See Giglio v. United States*, 405 U.S. 150 (1972).

4

Review of counsel's conduct is highly deferential. *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994). Second-guessing an attorney's strategic defense is not permitted; rather, courts should presume effectiveness and avoid second-guessing with the benefit of hindsight. *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Because a wide range of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Courts "are not interested in grading lawyers' performances" but, "are interested in whether the adversarial process at trial ... worked adequately." *Id*. at 386. To be unreasonable, the performance must be such that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers*, 13 F.3d at 386.

## 2.    Application

With the above law as a backdrop, the court will now consider Cass's grounds for ineffective assistance of counsel. When deciding a § 2255 petition without an evidentiary hearing, the court accepts the allegations in the petition as true. *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002). However, those allegations must be "reasonably specific" to merit deference. *Id*.

### a.    Failure to Move to Suppress Electronic Surveillance Evidence

Cass's first claim is that Brown rendered ineffective assistance by failing to move to suppress "illegal electronic surveillance evidence obtained at Mrs. Cass'[s] residence by law enforcement officials without first submitting probable cause affidavits to a judge of competent

5

jurisdiction, and without obtaining a warrant authorizing the interception of wire, oral[,] or electronic communications." (Doc. 1 at 4). However, a thorough review of the record shows that none of the evidence presented at trial was generated from wiretaps or other electronic surveillance requiring a warrant. (See Brown Affidavit, Doc. 4-1 at ¶ 1) ("I reviewed said audio and video transactions. None of the transactions were acquired through wire taps or video surveillance equipment placed inside of Ms. Cass' home or business. All audio tape and video footage was attained from equipment worn by the Government's confidential informant during the course of purchasing narcotics from Mrs. Cass, or her co-defendants."). Rather, the audio and video tapes presented were "one-party" audio and video recordings of drug transactions obtained from, and with the consent of, confidential informants ("CIs") who had conducted controlled buys. (*Id.*) *See Paul Anthony Cass v. United States of America*, No. 13-13583-B, Order Denying Motion for Certificate of Appealability (11th Cir. March 12, 2014) (a copy of this Order can be found at Doc. 27 in 1:11-cv-8006-LSC-JEO) ("Here, the record supports the district court's finding that no wiretap evidence was used at trial. Rather, the government introduced video and audio evidence, which resulted when various CI's - including Cunningham-were equipped with audio and video recording devices when purchasing crack cocaine.").

A "defendant has no justifiable expectation of privacy when he speaks with someone acting as a government informant, and is unaware that a recording device is concealed in the room." *United States v. Laetividial-Gonzalez*, 939 F.2d 1455 (11th Cir. 1991), *overruled on other grounds United States v. Giltner,* 972 F.2d 1563 (11th Cir. 1992). Thus, all that is required to record a conversation with no expectation of privacy is the consent of one of the parties. *See United States v. White*, 401 U.S. 745, 751-53 (1971). "No warrant is needed when a government informant consents to the recording of a conversation in which he participates." *United States v.*

*Smith*, 918 F.2d 1551, 1558 (11th Cir. 1990). Because the Government had the consent of the confidential informants on the recordings presented at trial, Cass's arguments that Brown should have moved to suppress the evidence are without merit. Therefore, Brown cannot be found to have been ineffective in failing to attempt to exclude the electronic surveillance evidence. As such, Cass's claim must fail.

In her reply, Cass raises several new arguments for why Brown should have moved to suppress the video and audio evidence. Specifically, Cass argues that the audio and video evidence should have been suppressed because one of the informants, Pamela Gaither, committed criminal trespass when obtaining the evidence; the informant's (again Pamela Gaither) consent was involuntary; the police failed to have the tape recordings sealed by judicial order in conformity with 18 U.S.C. § 2518(8)(a); and that the police did not properly supervise informant Willie James Cunningham while he was acting as a CI and during that time he drove without car insurance and "drove around the city high and unsupervised." (Doc. 6 at 13-24).

As a preliminary matter, the general rule is that a movant may not argue an issue in its reply brief that was not preserved in its initial motion or brief. *See Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987). This is true whether the case is in District Court or the Court of Appeals. *See United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) (citing cases) and *Parker City Water Auth. Inc. v. North Fork Apts., L.P.*, 2009 WL 4898354, *1, n.2 (S.D. Ala. 2009) (cases cited) (Steele, J.). The proper recourse in such an instance is for the court to disregard or strike the argument. *See Bowen*, 815 F.2d at 1446; *Parker City*, 2009 WL 4898354, *1 (stating the argument will not be considered); *Carter v. Austal, U.S.A, L.L.C.*, 2011 WL 3203761, *5 (S.D. Ala. April 1, 2008) (stating that a failure to raise the argument in the motion precludes consideration when raised in a reply). Accordingly,

the court will not consider Cass's arguments that were raised for the first time in her reply brief.

That being said, even if the court were to consider the arguments raised in Cass's reply brief, it is clear those arguments are without merit.  First, regardless of whether Paul Cass had previously asked Pamela Gaither to stay away, the testimony about the transaction where she was wearing a wire shows that when she arrived at the Casses' property no one asked her to leave, and in fact, Pamela Gaither was then sold crack cocaine.  (1:07-cr-0035-LSC-JEO, Doc. 299 at 770-77).  Second, Cass argues that Gaither's consent to be recorded was involuntary because she was coerced by Agent Thornton and was under the influence of drugs.  (Doc. 6 at 16-20).  Generally, any benefits that an informant might receive for cooperating with Government investigations would not vitiate her voluntary consent to the electronic recording of her conversations.  *United States v. Salisbury*, 662 F.2d 738, 740 (11th Cir. 1981) ("Wright may have hoped to benefit from his decision to cooperate with the government, but his free will was not overborne merely because his motive was self-serving.").  Further, the record does not support a finding that Gaither was intoxicated while she was cooperating with the investigation.  Testimony that she was intoxicated two to three days prior to talking to Agent Thornton is not probative of whether she was intoxicated at a later point in time.  In fact, the record as a whole is clear that Pamela Gaither did consent to having her communications recorded.  Third, Cass's argument concerning 18 U.S.C. § 2518(8)(a) is inapposite.  "It is obvious from a reading of subsection (8)(a) in context that it does not apply to consensual recordings not made pursuant to court order."  *United States v. Head*, 586 F.2d 508, 513 (5th Cir. 1978).[4]  Finally, the fact that Cunningham drove without car insurance and "drove around the city high and unsupervised"

---

[4] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

while acting as a CI is simply irrelevant to whether the video and audio recordings obtained by him were due to be suppressed.

Because there were no arguable grounds on which Brown should have moved to suppress the video and audio recordings, he cannot be considered deficient for failing to move to suppress the video and audio recordings introduced at trial.

### b.    Failure to Investigate Racial Composition of Venire

Cass's second claim is that Brown rendered ineffective assistance by failing to investigate the racial composition of the venire from which the petit jury was selected. Specifically, Cass contends that Brown "receiv[ed] credible information that the district court's juror system for electronically subpoenaing grand and petit jurors was race partial," and that "after said system produced [no] black jurors for these black defendants to select a jury," Brown improperly failed to investigate the matter, move to dismiss the indictment, or move the court for a new trial selection of petit jurors. (Doc. 1 at 8). In response, Brown testified that he "received no such information" about whether the District Court's summons for grand jury and petit jurors was race partial. (Doc. 4-1 at 1).

During trial, after the jury was selected with no objection, Brown stated on the record that he had "gotten some information from anonymous sources in terms of how jurors were subpoenaed electronically, that the process may not be impartial about that." (1:07-cr-0035-LSC-JEO, Doc. 299 at 281). He further stated that he felt "uncomfortable doing this, in thirteen years I have never had to do this ... [and] if I don't mention this, I feel I am being derelict in my responsibilities." (*Id.* at 281-82). In response, the court directed Brown that "if you as a lawyer feel like once you look into whatever that you need to file something, then take appropriate action to file it." (*Id.*) At that time, Brown stated that "we don't have any confirmation about

that ... we just wanted to mention it on the record." (*Id.*)  He additionally stated that "should we get confirming information, we'll file the appropriate motion." (*Id*. at 283).

Cass's argument is based on her Sixth Amendment right to a jury venire, from which the petit jury is drawn, that represented a fair cross-section of the community.  *See Taylor v. Louisiana*, 419 U.S. 522, 538 (1975).  The Supreme Court has emphasized that "in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor*, 419 U.S. at 538.  Instead, "[d]efendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id*.  Here, Cass had failed to provide the court with any reasonably specific documentation indicating that the venire process of this court systematically excludes distinctive groups in the community.  Further, Cass's claim assumes that whatever information Brown received was serious enough to warrant further investigation.  Because Brown explicitly represented to the court that he would file a motion challenging the selection of the venire if he received confirming information, yet he never filed such a motion, the court can presume that Brown never received such information and thus acted reasonably in choosing not to investigate the matter further.  *Strickland*, 466 U.S. 690.  Therefore, Brown cannot be found to have been ineffective in failing to investigate the process, move to dismiss the indictment, or move for a new selection of jurors.  Cass's claim must fail.

### c.       Failure to Investigate Government Witnesses

Cass's third claim of ineffective assistance of counsel is that Brown failed to investigate the statements and actions of the Government witnesses and denied Cass "compulsory process

for obtaining witnesses in her favor." (Doc. 1 at 12). In support, Cass submits an affidavit dated September 3, 2008, of Government witness Waylon Dickerson.[5] In the new affidavit, Dickerson testifies as follows:

> My confession to the case was a lie because of the pressure [Drug Task Force Agent] Patrick Thorton and fellow officers put on me and I didn't want to go back to prison. I hadn't been to Mr. Paul Cass house since 1994 and the things he was allegedly doing I had no knowledge of.... The information that I gave on the conviction in which Paul Cass is currently serving was erroneous and bogus due to coercion and threats.

(Doc. 1 at 50-51).

Significantly, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. In other words, the duty to investigate "does not ... compel defense counsel to investigate comprehensively every lead or possible defense ... or to scour the globe on the off-chance something will turn up." *Rompilla v. Beard*, 545 U.S. 374, 383, (2005). The relevant inquiry is not whether Brown pursued a particular defense or witness. Rather, Cass must show that not one reasonably competent attorney would act as did her counsel. *See Chandler*, 218 F.3d at 1318 ("Counsel's reliance on particular lines of defense to the exclusion of others—whether or not he investigated those other defenses—is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable.").

Here, Cass has not established that the course taken by her counsel was objectively unreasonable because she has failed to demonstrate any reason Brown should have further

---

[5] At trial, Dickerson testified that he bought crack cocaine from Paul Cass in May 2005 (1:07-cr-0035-LSC-JEO, doc. 299 at 420-21) and that at some unspecified time in the past, that he had bought crack cocaine from Patricia Cass (1:07-cr-0035-LSC-JEO, doc. 299 at 424-25).

investigated Dickerson or any other witnesses.  Dickerson gave no indication in his affidavit that
he would have revealed, prior to Cass's trial, that his expected testimony was false and a result of
police coercion.  In fact, Dickerson did not recant the portion of his testimony concerning the
drug buy in 2005 until after Cass's trial and sentencing.  There is nothing in the record to show
that prior to trial, Brown should have investigated whether Dickerson was going to provided
allegedly false information.  In sum, Cass has failed show that a reasonable lawyer in Brown's
circumstances had reason to further investigate Dickerson, or any other witnesses, and the
accuracy of his statements. *See Rogers*, 13 F.3d at 386.  Accordingly, Brown's representation
was not objectively unreasonable.

Further, the Government produced significant evidence of the crack cocaine operation
independent of Dickerson's testimony that he bought crack cocaine from Paul Cass once in 2005.
This includes numerous other recorded drug buys.  In other words, Dickerson's testimony was
not necessary to sustain Cass's guilt.  As such, even if the court were to find that Brown's
performance in not investigating Dickerson was deficient, there was still no prejudice to
defendant Patricia Cass. Therefore, this claim must fail.

### d. Failure to Move the Court for Judgment of Acquittal on Count One of the Indictment

In her fourth claim, Cass argues trial counsel was ineffective when she "failed to move
the court for judgment of acquittal on count one of the indictment where evidence was
insufficient to establish beyond a reasonable doubt that Mrs. Cass conspired to distribute drugs"
(Doc. 1 at 16).  At the close of the Government's evidence at trial, the following exchange
occurred between the court and the attorneys representing Paul and Patricia Cass:

The Court:  Let's go ahead.  The Government rests, I assume.  Both
Defendants want to make a motion, is that correct?

12

Mr. Brown:  Yes, Judge.  Just for the record, your Honor, motion for judgment of acquittal on behalf of Patty Cass.

The Court:  And Paul Cass as well?

Mr. Westry:  Yes, sir, on all courts as they are applicable to Paul Cass.

The Court:  Do any of you want to point out specifics that you think the Government has failed to prove a prima facia case?

*** 

Mr. Westry: Yes, sir. Specifically, Judge, and I will just fire it off, as to count one, we would submit on behalf of Mr. Cass that the Government has not shown beyond a reasonable doubt that Mr. Paul Cass knowingly and intentionally and unlawfully conspired with others to distribute and possess with intent to distribute at least 50 grams of a mixture containing detectable amounts of cocaine.  And to that end, your Honor, we just submit that there was testimony that the so-called runners bought from everywhere.

And we will further submit, your Honor, that Mr. Cunningham said there were numerous Places that he could have purchased drugs on the way to Paul's house when he was attempting to do these alleged controlled buys.  And specifically, we will also state that the evidence produced by the Government via the alleged video and audio tapes were unspecific, that they do not show drugs changing hands nor do they show money....

The Court: Note your objection.  Overruled.  Not objection, your motion, and it will be denied.  I'm sorry.

Mr. Brown:  Your Honor, relative to Patty Cass -

The Court Reporter: I'm sorry, I can't hear you.

The Court:  Speak up a little bit. Count one and count 29.

Mr. Brown:  Relative to Count 29, your Honor, which the court is aware is known as the crack house statute, we respectfully submit the Government has not made a prima facia case on that.  There has not been sufficient testimony for this jury to conclude that she ran this house, that she had any authority in this house.  Yes, she lived in the house.  As a matter of fact, the testimony was really on both sides and Ms. Gaither did say in her direct examination that Patty initially had some control there at the house.  The majority of the witnesses refuted that.  Just for the record, we would like to --

The Court:  It will be the same ruling.  The motion will be denied.

Mr. Westry:  And your Honor, we are joining in with that regard.

The Court:  Same ruling.  All right, denied.  Y'all take ten minutes.

(1:07-cr-0035-LSC-JEO, Doc. 299 at 814-16).

While it is clear to the court that Mr. Brown made the initial motion for judgment of acquittal on both counts, it is not clear from the transcript that he joined in arguments made by Mr. Westry as to why count one should be dismissed.  However, even assuming Mr. Brown did not properly raise arguments with respect to count one, Cass was not prejudiced by his failure to do so.

Rule 29(a) of the Federal Rules of Criminal Procedure provides that "after the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  In this case, the Government clearly submitted sufficient evidence to sustain Cass's conviction on count one.  (*See*, for example, the testimony of Pamela Gaither, 1:07-cr-0035-LSC-JEO, Doc. 299 at 749-809).   This is further supported by the Eleventh Circuit's affirmance of Cass's convictions.  *United States v. Cass*, 315 F. App'x 869, 870 (11th Cir. 2009).  Accordingly, because any motion for judgment of acquittal would have been property denied, there can be no prejudice as is required for a ineffective assistance of counsel claim.  As such, this claim fails.

> **e.**     **Failure to Object to Allegedly Incorrect Criminal History Calculation in the Presentence Investigation Report or to Request an Adjustment of the Base Level Offense Due to Cass's "minimal role in the charged offense"**

In her final claim of ineffective assistance of counsel, Cass argues that Mr. Brown "failed

14

to object to incorrect criminal history calculation and request adjustment in Mrs. Cass'[s] base offense level for her minimum role in the charged offense." (Doc. 1 at 18). This claim raises two separate arguments. First, Cass argues that counsel failed to object to the fact that the "Presentence Investigation Report incorrectly added three (3) points to Mrs. Cass'[s] criminal history calculation based on two prior state convictions in which Mrs. Cass, on both convictions, received a suspended sentence of 180 days in custody followed by 24 months of unsupervised release, as both sentences were suspended." (*Id.*) However, this claim is based on a misunderstanding of Cass's Presentence Investigation Report. A review of that report shows that Cass received a total of two criminal history points: one point each for a 1990 conviction for negotiating a worthless instrument and a 2004 conviction for endangering the welfare of a child. On both convictions, Cass was sentenced to 180 in custody and 2 years of unsupervised probation. The custodial parts of both sentences were suspended. On each conviction, Cass received one criminal history point pursuant to § 4A1.1(c). Unlike §§ 4A1.1(a) and (b), § 4A1.1(c) of the 2007 Sentencing Guidelines does not require a certain "sentence of imprisonment." U.S. SENTENCING GUIDELINES MANUAL § 4A1.1(c) (2007) ("Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item."). Because there is no minimum sentence of imprisonment associated with § 4A1.1(c), Cass's arguments concerning the fact that both custodial sentences were suspended is not applicable. Because the Presentence Investigation Report property calculated Cass's criminal history points, counsel was not ineffective in failing t o object to the same.

Second, Cass argues counsel was ineffective in failing to "object to the district court's determination that Mrs. Cass was responsible for all of the drugs in the alleged conspiracy." (Doc. 1 at 18). However, this assertion is clearly contrary to the facts of this case. Mr. Brown

specifically filed objections to the Presentence Investigation Report related to the amount of crack cocaine the Government sought to attribute to Cass.  (1:07-cr-0035-LSC-JEO, Doc. 226). Counsel additionally raised this objection with the court during the sentencing hearing.   And, in fact, this court heard further testimony on the issue at that time.  (1:07-cr-0035-LSC-JEO, Doc. 300).  Because counsel did object to the amount of crack cocaine attributable to Cass at sentencing, her claim of ineffective assistance of counsel for his failing to do so cannot stand.

C.     *Giglio* **Claim**

Cass also contends that the Government denied her a fair trial, in violation of her Fifth and Sixth Amendment rights, by presenting "known false testimony to the jury, that resulted in [her] convictions."  (Doc. 1 at 15-16).  In other words, Cass argues that the government knowingly presented false testimony from Waylon Dickerson and that this testimony resulted in her convictions.  (*Id.*)  This argument is based on the well-established rule that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).  This claim is known as a *Giglio*[6] claim.  "To prevail on a *Giglio* claim, a petitioner must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material i.e., that there is any reasonable likelihood that the false testimony could ... have affected the judgment." *Ford v. Hall*, 546 F.3d 1326, 1331-32 (11th Cir. 2008) (internal citation and quotation marks omitted).

In support of her claim, Cass has submitted the affidavit of Waylon Dickerson, dated September 3, 2008.  (Doc. 1 at 27-29).  In his affidavit, Dickerson explains that he testified

---

[6] *Giglio*, 405 U.S. at 154.

16

against Cass because he was being pressured by a drug task force officer and did not want to go back to prison. He further stated that contrary to his testimony at trial (see 1:07-cr-0035-LSC-JEO, doc. 299 at 412-39), he has not been to the Cass's house since 1994.[7]

As to the first element, Cass has failed to submit any evidence showing that the Government knew that Dickerson's testimony concerning his 2005 drug buy was false. Further, there is no reasonable likelihood that the allegedly false testimony could have affected the judgment. As a preliminary matter, the only specific testimony Dickerson states was falsely given is related to the 2005 incident where he testified he bought crack cocaine from Paul Cass at the Casses's residence. In light of the overwhelming evidence of other distribution activity during the relevant time period, Dickerson's testimony was simply redundant. Further, any testimony concerning buying crack cocaine from Patricia Cass at an unspecified time in the past, cannot be said to have a reasonable likelihood of affecting the judgment as it is unclear about whether that testimony concerns the relevant conspiracy period. Further, there was ample other evidence concerning Cass's involvement to render Dickerson's testimony about the same immaterial. As such, even in the light most favorable to Cass, it cannot be said that there is a reasonable likelihood Dickerson's testimony affected the judgment. Therefore, Defendant Cass is not entitled to any relief on this claim.

## IV.    CONCLUSION

For the foregoing reasons, Cass's motion to vacate, set aside, or correct her sentence

---

[7] At trial, Dickerson testified that he bought crack cocaine from Paul Cass in May 2005 (1:07-cr-0035-LSC-JEO, doc. 299 at 420-21) and that at some unspecified time in the past, that he had bought crack cocaine from Patricia Cass (1:07-cr-0035-LSC-JEO, doc. 299 at 424-25).

under 28 U.S.C. § 2255 (doc. 1) is due to be denied.[8]  An appropriate order will be entered.

Done this <u>27th</u> day of <u>March 2014</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

[160704]

---

[8] Also before the court are Cass's "Pro Se Motion to Supplement the Above Named Action in Light of the Recent Supreme Court Ruling of <u>Alleyne v. United States,</u> No. 11-9335" (doc. 7) and "Motion for Appointment of Counsel 18 USCA § 3006(A)" (doc. 8).  Defendant's Motion to Supplement (doc. 7) is **GRANTED**.  However, *Alleyne v. United States*, 133 S. Ct. 2151 (2013) is inapplicable to Defendant's claims as the undersigned did not make a fact determination about a sentencing factor that increased Cass's mandatory minimum sentence.  Her Motion for Appointment of Counsel (doc. 8) is **DENIED**.